Joseph Haas v. Commissioner. Fay Haas v. Commissioner.
Haas v. Commissioner
Docket Nos. 18475, 18669.
United States Tax Court
1951 Tax Ct. Memo LEXIS 347; 10 T.C.M. (CCH) 89; T.C.M. (RIA) 51027; January 24, 1951
*347 A. R. Kehoe, Esq., 610 Colman Bldg., Seattle, Wash., for the petitioners. W. E. Koken, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax for the year 1944 against petitioners as follows: Joseph Haas, $7,122.53, Fay Haas, $7,247.53. The sole issue is whether, in 1944, petitioners' son, Herbert Haas, was a partner of petitioner, Joseph Haas, in a real estate and insurance business operated under the name of Joseph Haas & Son. The proceedings were consolidated for hearing. Findings of Fact Petitioners were husband and wife in 1944, residing in Bremerton, Washington, and each filed a separate, individual income tax return with the collector of internal revenue for the district of Washington, in accordance with the community property laws of that state. Petitioner Joseph Haas will hereafter be referred to as "petitioner", and Herbert Haas, the son of petitioners, as "Herbert". Petitioner, from 1931 until some time in 1946, was engaged in the real estate and insurance business, principally at Port Orchard, Washington. The business, from 1931 to 1941, was conducted under *348 the name of Joseph Haas, and from 1941 to 1946 under the name of Joseph Haas & Son. In 1936 Herbert, then a student at the University of Washington, began working for the petitioner part time in the business, and in 1939 Herbert, then 21 year old, graduated from the University of Washington, having majored in business administration. He at once became a full time paid employee of his father in the business, performing many important duties therein and learning all phases of the business, and he continued as an employee until the early part of 1941, when he was made a partner in the business. Herbert was married on May 12, 1941. Several months prior thereto he told petitioner of his wedding engagement, and petitioner was pleased and at once offered Herbert a partnership in his business. Whereupon an oral partnership agreement was entered into by and between petitioner and Herbert, whereby Herbert was given by petitioner a 50 per cent partnership interest in the business and was to receive 50 per cent of the earnings from the business, provided he would devote his full time and attention thereto. Herbert was to contribute no capital, only his services to the business, and no written *349 agreement of the partnership was executed. Pursuant to the agreement, the name of the business was changed to Joseph Haas & Son, the bank account was changed to the new firm name, and petitioner and Herbert were each authorized to draw checks, sign the firm name thereto, and withdraw funds from the bank, and most of the checks were signed by Herbert, since he had charge of the office and its operation and the payment of bills, taking care of the pay roll, etc. From the time the partnership was formed in 1941, until May 1943, Herbert devoted his full time to the business, taking care of the books and banking and assisting in the sale of real estate and insurance and otherwise contributing vital services to the business. In May, 1943, Herbert's local draft' board indicated that if he did not get into some essential industry, he would be drafted, and accordingly he at once went to work for the United States Army Engineers in a civilian capacity, which employment his draft board deemed essential to the war effort. His work was that of lease negotiator with the army engineers and among other duties consisted of selecting and obtaining sites for various barrage balloon installations, *350 army barracks installations and concealed gun installations in and around Port Orchard and Bremerton in Kitsap County, Washington. These installations were designed to prevent and defend against enemy attack upon the Bremerton Navy Yard, ship yards, etc., in that area. Herbert's job with the army engineers required that he work six days a week and his usual hours were from 8 A.M. to 5 P.M., and this employment lasted until October or November, 1944. Due to the draft situation, which had not changed, before his work was finished with the army engineers, Herbert had contracted to work in another war industry, viz: the Boeing Aircraft Company in Seattle, as lease negotiator. He began work with this company within a few weeks after termination of his army engineers job, and continued to work for the Boeing Company the rest of 1944 and a portion of 1945. The Boeing Company was then engaged in building airplanes for the United States Government for its use in World War II then in progress, and Herbert's employment therein caused him to be further deferred from induction into the armed forces. His hours of work with the Boeing Company were generally from 7:30 A.M. to 5:30 P.M., six days *351 weekly. His work with this company was terminated in the middle of 1945, whereupon he resumed his full time work with the business of Joseph Haas & Son. During all of 1944 Herbert lived in Seattle with his family where he had moved from Port Orchard when he began work for the army engineers. Port Orchard, which was the headquarters of Joseph Haas & Son, is about an hour's ferry ride from Seattle. Seattle was headquarters of the army engineers, but much of the work Herbert performed for them required him to be in and around Port Orchard and Bremerton. The only part of 1944 in which Herbert devoted his entire time to the business of Joseph Haas & Son was the few weeks interval between the termination of his job with the army engineers and the beginning of his work with the Boeing Company. During the rest of 1944 the major portion of his time was devoted to his employment with the army engineers and the Boeing Company. He did, however, throughout 1944 perform some service for the firm, which was valuable. While seeking leases for the army engineers, Herbert sometimes learned of real property for purchase or sale, which information he passed on to his firm, which occasionally resulted *352 in transactions of financial benefit to the firm. After regular hours of duty with the army engineers and also with the Boeing Company, Herbert spent time in some of the evenings working in the office of Joseph Haas & Son, which office then usually remained open seven days a week until nine P.M., or later. Many war workers and others came at night for business reasons. Herbert's night work in the office consisted of making out pay rolls, writing checks and similar tasks. In the middle of 1946 the partnership between petitioner and Herbert was terminated, the Port Orchard office was closed and petitioner retired completely from the real estate business. In settlement of Herbert's interest in the business, petitioner paid him (1) $12,100 with which to buy a home; (2) $2,000 with which to open and equip a real estate office in Bremerton which was to be Herbert's separate business, and (3) the right to use the firm name of Joseph Haas & Son in such business. Bremerton's population was 70,000, Port Orchard 15,000, both being in Kitsap County. In 1947 Jessie Ann Haas, wife of Herbert, in the Superior Court of Kitsap County, Washington, brought suit for divorce and accounting against *353 him, joining as defendants therein petitioners Joseph and Fay Haas. It was alleged that there was due the community estate of Herbert and Jessie Ann Haas sums of money from the business of Joseph Haas & Son accruing during the period of 1941 to 1946. The court decreed that there was due Herbert and his wife by petitioner, Joseph Hass, a 50 per cent interest in the partnership of Joseph Haas & Son, of which the undrawn interest was $34,351.17, of which sum $26,319.86 was awarded to Jessie Ann Haas. This decree provided, however, with reference to the income tax claim of the Government against Joseph and Fay Haas growing out of the income of Joseph Haas & Son, that if "* * * the Government is successful in taxing all or any part of the income over 50% of Joseph Haas and Son to Joseph and Fay Haas, plaintiff is hereby ordered to allow any over-assessment proposed for her resulting therefrom, to be credited against the deficiencies proposed to be collected from Joseph and Fay Haas, * * *" For the calendar year 1944 Joseph Haas & Son filed a partnership return showing the firm's ordinary net total income to be $56,809, one-half of which, $28,404.50, was reported as belonging to petitioner *354 and the other one-half, $28,404.50, to Herbert. Petitioner and his wife Fay and Herbert and his wife Jessie Ann each filed individual income tax returns, reporting that one-fourth of the firm's net earnings belonged to each of them under the community property laws. In similar fashion income tax returns were filed by the partnership and each of these individuals during each of the years of the partnership's existence. For the year 1944 the Commissioner determined that the partnership was invalid and refused to recognize its existence and determined that the entire net income from the business of Joseph Haas & Son was taxable, one-half to petitioner Joseph Haas and the other half to petitioner Fay Haas. Petitioner and Herbert, acting in good faith and with a business purpose, in 1941 intended to and did joint together as partners in carrying on the business of Joseph Haas & Son, and such partnership was continued in good faith throughout the calendar year 1944. One-half of the net income from such business in 1944 belonged to and was taxable to petitioner and one-half belonged to and was taxable to Herbert, the interest of petitioner and Herbert each being subject to the community *355 ownership of their respective wives. Opinion Both parties cite and rely upon . Measured by the test prescribed therein, we have found as an ultimate fact that in 1944, the taxable year here involved, a partnership existed between petitioner, Joseph Haas, and his son, Herbert Haas. We deem it unnecessary to restate the facts upon which this conclusion is based, which are fully set forth in our findings. From the evidence it appears that an oral partnership agreement was entered into in 1941 between the parties, the firm name and the bank account were changed to conform thereto and the subsequent conduct of the parties in their relationship to the business and other circumstances clearly establish that "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise", and did so associate themselves together in the conduct of the business, and that a bona fide partnership existed between them from 1941 to 1946. Respondent does not concede that a partnership was ever formed, but if so, contends that since Herbert Haas contributed no capital thereto, only his services, *356 and was to devote his entire time to the business, the partnership was terminated when he accepted employment elsewhere. Since Herbert became a bona fide partner in 1941, if he had been in the armed forces in 1944, the taxable year involved, and had rendered no service whatever to the partnership in that year, under our holding in , and other cases, his absence while serving in the military forces would not have caused him to lose his status as a partner. Here, in lieu of service in the armed forces, Herbert, with the knowledge and approval of his local draft board, accepted civilian employment in government service and during most of 1944 was actively engaged as an employee of the United States Army Engineers in the construction of a military defense project, and for the last month and a half or two months of 1944, again with the consent and approval of his local draft board, was employed with the Boeing Aircraft Company, which was engaged in building air planes for the United States Government for its use in World War II, then in progress. Furthermore, the work performed by him for the army engineers, and also for the Boeing Aircraft *357 Company was in such close proximity to Port Orchard where the partnership was located that he was enabled to and did, during extra hours and at nights, perform valuable service for the partnership. In , footnote 6, it was said: "Of course one who has been a bona fide partner does not lose that status when he is called into military or government service, and the Commissioner has not so contended." From this expression of the Supreme Court it would seem that the "government service" rendered by Herbert in 1944 would not have caused him to lose his status as a partner. However, it is not necessary for us to pass specifically upon this question, since he did render valuable service to the partnership in that year, and accordingly respondent's contention in this regard is overruled. We do not agree with respondent's contention that there is a substantial or material difference in the testimony petitioner gave on this hearing and that which he gave as a witness in the divorce case in the state court. His evidence in both proceedings, when considered as a whole, is not in material conflict. The decree in the state court is not binding *358 upon us, as petitioners contend, but it is reassuring to know that that court held that petitioner and his son, in 1944, and the other years involved, were each entitled to 50 per cent of the profits from the firm of Joseph Haas & Son, as we hold here. Decisions will be entered for petitioners.